[No. 30466. Department One. June 17, 1948.]

*In the Matter of the Estate of* ALLAN T. CRUTCHER, *Deceased.*

GRACE M. CRUTCHER, *as Executrix, Appellant,* v. JOSEPH MACEK, *Respondent.*[1]

[1]Reported in 194 P. (2d) 964.

*Eisenhower, Hunter & Ramsdell,* for appellant.

*William N. Goodwin,* for respondent.

SCHWELLENBACH, J.—This is an appeal from an order fixing the appraiser's fee of respondent in the above estate at $595.53.

On February 17, 1947, the last will and testament of Allan T. Crutcher, deceased, was duly admitted to probate by the superior court for Pierce county, and Grace M. Crutcher was appointed executrix of the estate.

February 28, 1947, the supervisor of the inheritance tax and escheat division nominated Stuart Elliott as one of the appraisers of the estate.

March 7, 1947, the court appointed Reno Odlin, Joseph Macek, and Stuart Elliott, as appraisers.

June 12, 1947, the appraisers filed their appraisement, fixing the total value of the estate at $595,527.47.

July 11, 1947, Dix H. Rowland, court commissioner, fixed the following fees for the appraisers: Stuart Elliott, $595.53; Reno Odlin, $100; Joseph Macek, $100.

July 17, 1947, respondent filed in superior court a petition to revise the order of the court commissioner fixing his fee at $100, as provided by Rem. Rev. Stat., § 86 [P.P.C. § 107-5]. A hearing was held, at the conclusion of which, and after argument of counsel, the following occurred:

"THE COURT: Well, gentlemen, that Griffiths case to my mind is neither good law nor good sense. They say that doubtless the State appraiser has responsibilities greater than any other appraiser, and yet before me is exactly the same oath that each and every one of them takes, and they do exactly, each and every one of them, the same thing. Now the State by this statute states what this work is worth. True, the State appraiser has some responsibility and some distinction, but the State says that this man that does exactly the same things that the other two men do, that the reasonable value of his work is one-tenth of one per cent. They all do the same work; they all take the same oath; they have the same responsibility.

"There is something beyond the actual amount of hours, the actual amount of work done. There is responsibility both to the State and to the Federal Government involved in every one of these appraisements where the amount is sufficient to take it into the two different jurisdictions. Now, these men, all of them, have responsibility.

"I could readily see where the Commissioner, when he passed on this, that all he had before him was Mr. Eisenhower's statement that in his opinion this appraiser had only spent two hours on it, and perhaps he does not take the same view of these things that I do. Frankly, I cannot see that there is fish on one side and fowl on the other side of the line. They all swore to appraise the estate fairly and honestly, and the testimony here is and the facts here are, I have no doubt, that Stuart Elliott was named by the State; that Mr. Odlin was undoubtedly named by your clients in your office, and that the Court exercised its privilege and named Mr. Macek. Now, the fact that Mr. Macek is neither a banker nor an attorney, I do not believe, as long as he takes the same oath and is charged with the same responsibility with these other people here, that there is any great distinction to be made. . . .

"The testimony of Mr. Macek is that this was not any two hour proposition by any means. It could not very well be. He did take the time, take the responsibility, and take upon himself the burden of looking into these properties as best he could, and it undoubtedly had its bearing and was undoubtedly of some value, what he did. He was evidently doing the best he knew how, and that is all the law requires.

"As I say, with the responsibility they all have, and the State having fixed that value, this Court follows the statute and will allow a fee the same as the State appraiser received.

"MR. ROSELLINI: Will the Court find that the reasonable value— (interrupted)

"THE COURT: The reasonable value is $595.53. One-tenth of one per cent is the reasonable value as I find it."

Rem. Rev. Stat. (Sup.), § 11211 [P.P.C. § 974-53], provides:

"The Superior Court having jurisdiction, shall appoint three suitable, disinterested persons to appraise the estate and effects of deceased persons for inheritance tax purposes and subsequent sales shall not affect the value so used, and unless otherwise provided by order of the court, the appraisers appointed under the probate law to appraise the

estate and effects of deceased persons, shall be and constitute the appraisers under the provisions of this act: *Provided, however,* That one of such appraisers shall be recommended by the supervisor, and appointed by the court as one of the three appraisers. The three appraisers thus appointed to appraise the estate shall determine the value thereof. In the event the three appraisers cannot agree upon the value, then each appraiser shall file with the court his findings, and the court shall then fix a value for the appraisement and inheritance tax purposes. Anyone may file exceptions with the court to the appraisement as found by the appraisers, which shall be heard and determined by the court having jurisdiction of the estate."

Rem. Rev. Stat. (Sup.), § 1465 [P.P.C. § 974-51], provides:

"Every executor, or administrator shall make and return upon oath, into the court, within one month after his appointment, a true inventory of all of the property of the estate which shall have come into his hands, and within thirty (30) days after filing such inventory he shall make application to the court to appoint three disinterested persons to appraise the property so inventoried, and it shall be the duty of the court to appoint such appraisers. Such appraisers shall receive as compensation for their service each an amount as to the court shall seem just and reasonable, not to exceed $5.00 per day for the time spent in making such appraisement: *Provided,* That in all estates where an inheritance tax is payable, the court shall fix the compensation of each appraiser at such an amount as the court may deem just and reasonable notwithstanding the foregoing limitation: *Provided further, however,* That in all estates over $5,000 the appraiser recommended by the supervisor shall receive a fee of one-tenth of one per cent of the inventoried value of the estate and no more."

The constitutionality of the above provisions, which were enacted by the Laws of 1939, chapter 202, p. 692, was challenged in the recent case of *Griffiths v. State,* 28 Wn. (2d) 493, 183 P. (2d) 821. We there said:

"Appellant challenges the fixing by statute of the fee of the state's appraiser on the ground that the fee is arbitrary and therefore an encroachment upon the judicial power.

"The legislature was clearly within its authority to change the fees of the appraisers and specifically to fix the state appraiser's fee at a percentage certain. Whether the

fee provision is arbitrary, has nothing to do with the judicial power. The legislature has retained—which is its constitutional right—the control of fees to be paid appraisers. . . .

"Doubtless, the legislature had in mind that the state's appraiser would have responsibilities and duties different and beyond that of the other appraisers; therefore, fixed the fee. The fee of one tenth of one per cent of the appraised value of an estate for the services of the state's appraiser is too small to be oppressive or arbitrary."

■ The legislature, in Rem. Rev. Stat. (Sup.), § 1465, has seen fit to provide a set fee for the appraiser recommended by the supervisor (in all estates over five thousand dollars) at one tenth of one per cent of the inventoried value. As to the other two appraisers (and the fees of each of the three appraisers could be different), their fees could amount to more or less than one tenth of one per cent of the inventoried value. The court could arrive at an amount which would result in the compensation of either, or both, of the other appraisers, being one tenth of one per cent of the inventoried value. But, in fixing the compensation of each appraiser other than the one recommended by the supervisor, the legislature has placed upon the court the duty of arriving at an amount *as the court* may deem *just and reasonable* with regard to the services rendered by each appraiser.

■ Did the court, in the exercise of its discretion, arrive at an amount for respondent which it deemed *just and reasonable*? Clearly, it did not. It is unmistakable that the court based its ruling upon the judgment of the legislature in fixing the fee of the appraiser recommended by the supervisor, and not upon its independent judgment as to what constituted a just and reasonable fee for respondent. It is true that, at the instance of counsel for respondent that it set a reasonable value, the court said: "The reasonable value is $595.35." But then the court went on to say: "One-tenth of one per cent is the reasonable value as I find it," clearly demonstrating its determination to follow the value set by the state.

We hold that the court did not follow the statute in arriving at the compensation to be allowed respondent in that it did not fix his compensation at such an amount as it (the court) deemed just and reasonable, based on the services rendered.

We are asked to hold that the allowance made to respondent was so unreasonable and excessive, in view of all the circumstances, as to constitute an abuse of discretion on the part of the trial court. Having ruled that the trial court did not follow the statute in fixing respondent's compensation, there is no exercise of discretion for us to review.

The order appealed from will be reversed, and the cause remanded to the trial court with directions to fix the compensation of respondent at such an amount as the court may deem just and reasonable.

MALLERY, C. J., MILLARD, SIMPSON, and HILL, JJ., concur.